

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-12-00319-CV

**PETERSON REGIONAL MEDICAL CENTER**,
Appellant

v.

Laurie M. **O'CONNELL**, Individually
and as the Representative of the Estate of Kenneth Mayhew,
Appellees

From the 216th Judicial District Court, Kerr County, Texas
Trial Court No. 11-957-A
Honorable N. Keith Williams, Judge Presiding

Opinion by:  Sandee Bryan Marion, Justice

Sitting:  Sandee Bryan Marion, Justice
Rebecca Simmons, Justice
Marialyn Barnard, Justice

Delivered and Filed:  November 14, 2012

AFFIRMED

This is an interlocutory appeal of the trial court's order denying Peterson Regional Medical Center's ("Peterson") motion to dismiss. The motion to dismiss asserted Laurie M. O'Connell failed to serve expert reports complying with Texas Civil Practice and Remedies Code section 74.351. On appeal, Peterson argues the reports of Robert Tan, M.D., and Alexis Williams, R.N., are deficient as a matter of law and the trial court erred in denying its motion to dismiss. We affirm.

**BACKGROUND**

O'Connell filed suit against Peterson asserting claims for negligence allegedly resulting in the death of her father, Mr. Kenneth Mayhew. Mayhew, a man in his nineties, was admitted to the Emergency Room of Peterson Regional Medical Center on March 15, 2010, after complaining of a temporary loss of consciousness. Mayhew suffered a fall prior to his arrival at the emergency room. Upon admission, Mayhew received a head CT scan that showed "no evidence of acute blood, midline shift or tumor." Mayhew was administered intravenous morphine and Ativan. Approximately one hour after the administration of the morphine and Ativan, Mayhew, unsupervised, suffered a second fall sometime between 3:30 a.m. and 4:30 a.m. on March 16, 2010. After the fall, Mayhew received a second head CT scan that detected a "right frontal subarachnoid hemorrhage and a frontal scalp hematoma." Mayhew was subsequently sent by ambulance to Brooke Army Medical Center where he was later placed on life support machines. He died shortly thereafter.

After filing suit alleging negligence in leaving Mayhew unsupervised after administering drugs known to cause falls in the elderly, O'Connell timely served Peterson with the expert reports and curricula vitae of Robert Tan, M.D., and Alexis Williams, R.N. Peterson objected to both reports as insufficient and moved to dismiss. Specifically, Peterson argued (1) Dr. Tan was not qualified to render an expert opinion on the negligence of a health care provider that is a hospital; (2) Dr. Tan's report did not provide a fair summary of his opinions; and (3) Williams's report did not provide a fair summary of her opinions because she failed to identify the documents she reviewed. After a hearing, the trial court overruled Peterson's objections and denied its motion to dismiss.

## STANDARD OF REVIEW

On appeal, Peterson complains the expert reports of Williams and Dr. Tan fail to meet the requirements of the Texas Civil Practice and Remedies Code chapter 74 and thus the trial court erred in denying its motion to dismiss. We review a trial court's ruling on a motion to dismiss a case under section 74.351 for an abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to any guiding principles and rules. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).

"A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(l) (West 2008). If a trial court fails to analyze or apply the law correctly, it has abused its discretion. *Jorgensen v. Tex. MedClinic*, 327 S.W.3d 285, 287 (Tex. App.—San Antonio 2010, no pet.).

## EXPERT QUALIFICATION

In its motion to dismiss, Peterson asserted Dr. Tan was not qualified to render an opinion in a suit against a health care provider because his curriculum vitae does not identify him as ever having served as a director or administrator of an acute care hospital and, thus, he is not qualified to render an expert opinion on the negligence of a hospital such as Peterson Regional Medical Center.

A person may qualify as an expert witness on the issue of whether a health care provider departed from accepted standards of care only if the person (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant

health care provider; (2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care. TEX. CIV. PRAC. & REM. CODE § 74.402(b). In making a determination of whether a particular expert is qualified, the statute does not focus on the person's title, but rather centers on the expert's training, experience and knowledge of the standards of care applicable to the "illness, injury, or condition *involved in the claim*." *See id.* (emphasis added).

Dr. Tan is a board-certified physician specializing in geriatric medicine. He is board-certified in both family medicine and geriatrics medicine. For the sixteen years prior to writing the report, he served as a medical director for various long-term care facilities and has received certification through the American Medical Directors Association. Dr. Tan's report states, as a geriatrician, he would typically care for patients such as Mayhew.

While Dr. Tan does not hold the title of a hospital administrator, at issue is the standard applicable to Mayhew's *condition*, which in this case is the care of a man in his nineties after the administration of drugs known to cause falls in the elderly. A review of Dr. Tan's qualifications shows he has the training, experience, and knowledge of the standard of care and treatment of elderly patients such as Mayhew. We conclude the trial court did not abuse its discretion in denying Peterson's motion to dismiss based of Dr. Tan's alleged lack of qualifications to render an opinion.

## FAIR SUMMARY

Peterson also complains neither Dr. Tan's report nor Williams's report provides a "fair summary" of their opinions. Section 74.351 requires a health care liability claimant to provide

the defendant with an expert report within 120 days after filing the petition. TEX. CIV. PRAC. & REM. CODE § 74.351(a). Section 74.351(r)(6) defines "expert report" as a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding (1) applicable standards of care, (2) the manner in which the care rendered by the physician or health care provider failed to meet the standards, and (3) the causal relationship between that failure and the injury, harm, or damages claimed. TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6). A report need not marshal all the plaintiff's proof, but it must include the expert's opinion on each of the elements identified in section 74.351(r)(6). *Palacios*, 46 S.W.3d at 878–79 (citing *Hart v. Wright*, 16 S.W.3d 872, 877 (Tex. App.—Fort Worth 2000, pet. denied)).

To constitute a good-faith effort to provide a fair summary of an expert's opinions, an expert report must discuss the standard of care, breach, and causation with sufficient specificity to (1) inform the defendant of the conduct the plaintiff has called into question, and (2) provide a basis for the trial court to conclude that the claims have merit. *Palacios*, 46 S.W.3d at 879. "While a 'fair summary' is something less than a full statement of the applicable standard of care and how it was breached, even a fair summary must set out what care was expected, but not given." *Id.* at 880. A report with mere conclusions as to the standards of care, breach, and causation does not represent a good-faith effort to provide a fair summary and is thus deficient for failing to comply with the statutory requirements. *See id.* at 879. To go beyond mere conclusions, an expert must explain the basis of his statements and link his conclusions to the facts. *Bowie*, 79 S.W.3d at 52.

## A. Dr. Tan

Peterson argues Dr. Tan's report fails to "provide a fair summary of Dr. Tan's opinions of the standards of care, failure to meet the standards, and the causal relationship."

In his report, Dr. Tan opined on the standard of care a hospital owes an elderly patient after the administration of "powerful medications" such as morphine and Ativan. He describes both medications as drugs known to cause falls in the elderly stating, "drugs like Morphine and Ativan in combination given to elderly patients can result in falls, through mechanisms such as a drop in blood pressure or clouding of their mental abilities." He further explained the standard of care in the administration of such "fall inducing medication" requires additional monitoring to prevent falls. Dr. Tan also opined Peterson did not meet that standard of care by stating:

> [Morphine and Ativan] can be given in carefully selected patients, but, given the potential frailties of elderly patients such as Mr. Mayhew, the standard of care when administering such drugs to an elderly patient like Mr. Mayhew requires additional monitoring by hospital staff, e.g. a nurse or sitter. There was no evidence of this in this case. There was no documentation of the need for additional monitoring by either the physician or nurse. In fact, the patient was left alone after these medications were given.

Dr. Tan also opined on the causal relationship between the failure to provide additional monitoring and the resulting fall that ultimately led to Mayhew's death by stating, "[a]s a deviation from the standard of care, there is evidence to suggest the inopportune death of Mr. Mayhew was the result of not providing a secure and safe environment for him . . . ." He also stated, "[s]imple monitoring would have allowed facility staff to intervene and prevent Mr. Mayhew's fall that lead to his untimely death."

Dr. Tan's summary set out what care was expected, but not given. *See Palacios*, 46 S.W.3d at 880. To represent a good-faith effort to provide a fair summary of his opinions Dr. Tan was not required to marshal all of O'Connell's proof, but only needed to include his opinion on each element—standard of care, breach, and causation. *See id*. at 878–79. After reviewing Dr. Tan's report, we conclude it met the requirements of making a good-faith effort to provide a fair summary under *Palacios* because it informed Peterson of the specific conduct O'Connell has

called into question and provided a basis for the trial court to conclude that her claims have merit. *See id*. at 879.

## B. Alexis Williams, R.N.

Next, Peterson argues the trial court abused its discretion in denying Peterson's motion to dismiss because Williams's report was insufficient as a matter of law. Peterson contends Williams's report was not a "fair summary" because her report "never identifies the documents reviewed which she claims are deficient."

Peterson's argument is that Williams was required to detail *inside* of her report what documents she reviewed in order to provide a "fair summary," because her report cannot be "fair" to them if they do not know what Williams reviewed. In its motion to dismiss, Peterson asserted it was necessary that the documents Williams reviewed be identified due to what Peterson argued were "complaints of inadequacies of documents or records" in her report. In support of its argument, Peterson pointed to the language in Williams's report such as, "[f]ailure to accurately or intelligently report and/or document a client's status . . ." and, "I did not find a fall assessment . . ." as language indicating inadequacies of documents; therefore, requiring her to identify the specific documents she reviewed.

In her report, Williams stated Mayhew represented a "very high fall risk," particularly after the administration of Ativan, which she stated has "potential side effects of dizziness, drowsiness, disorientation, and unsteadiness." Williams opined on the standard of care required when treating an elderly patient with such medications. Williams's report, in relevant part, stated as follows:

> [W]hen he was found to have suffered his second fall—there is no documentation to support the care that was given to this patient. Failure to accurately or intelligently report and/or document a client's status including signs, symptoms, or responses and the nursing care delivered is a breach of the standard of care.

. . .

> Further, when reviewing the documentation, I did not find a fall assessment or a nursing assessment of this patient after they arrived on the floor. An assessment at this time would likely have included the administration of Ativan, which would most likely not have been part of the initial fall assessment. The subsequent failure to conduct a second fall assessment upon his arrival on the floor—an assessment that would have taken into account the effects of his medication—was also a breach of the standard of care.

Williams further stated that after the administration of Ativan, "[n]o documentation in the nursing record suggests that any interventions were taken to prevent injury by a repeat fall." Williams's comments on the lack of documents providing a fall assessment go towards her opinion that Peterson's failure to conduct/document fall assessments to prevent falls was a breach of the standard of care. She demonstrates this in her report by stating Peterson's "[f]ailure to accurately or intelligently report . . . a client's status . . . is a breach of the standard of care."

We find no statutes or case law to support Peterson's argument. Section 74.351(r)(6) only requires that an expert provide a "fair summary of the expert's opinions . . . regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed" TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6). Nothing in section 74.351 requires the expert to detail in their report what documents they reviewed in order to provide a fair summary. In determining the adequacy of a report, the trial court must look only to the four corners of the report. *Bowie*, 79 S.W.3d at 53. The sufficiency of a report is determined only by examining the report itself. *Quinones, M.D. v. Pin*, 298 S.W.3d 806, 810 (Tex. App.—Dallas 2009, no pet.). In *Findley-Smith, M.D. v. Smith*, the defendants argued the good-faith requirement in *Palacios* that an expert report provide a basis for the trial court to

conclude the claims have merit required the expert to review *all* medical records relating to the case. *Findley-Smith, M.D. v. Smith*, No. 01-07-00360-CV, 2008 WL 525813, at \*4 (Tex. App.— Houston [1st Dist.] Feb. 28, 2008, pet. denied) (mem. op.). The appellate court disagreed, holding the trial court need only look at the expert report itself in making a determination of whether the claims have merit, not at whether the expert has or has not reviewed all relevant documents. *Id*. "Otherwise, the trial court would be put in the position of deciding the merits of the case in summary judgment fashion, which *Palacios* prohibits." *Id*. (citing *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001)). An attack of the data underlying an expert's opinion is beyond the scope of a section 74.351 challenge. *Quinones*, 298 S.W.3d at 813. Accordingly, we find no support for Peterson's argument that Williams's complaints of "inadequacies" require her to identify in her report the underlying data she reviewed.

## CONCLUSION

We conclude the trial court did not abuse its discretion denying Peterson's motion to dismiss.[1] We affirm the trial court's judgment.

Sandee Bryan Marion, Justice

---

[1] We decline to address the issue regarding the motion for a thirty-day extension as it is not dispositive to this appeal. TEX. R. APP. P. 47.1.