

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-13-00800-CV

Brenda **PICKENS**,
Appellant

v.

Thomas **LEYTHAM**, M.D.,
Appellee

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-CI-00666
Honorable David A. Canales, Judge Presiding[1]

Opinion by:    Patricia O. Alvarez, Justice

Sitting:        Karen Angelini, Justice
                 Marialyn Barnard, Justice
                 Patricia O. Alvarez, Justice

Delivered and Filed: February 26, 2014

AFFIRMED

After being admitted to Northeast Baptist Hospital for persistent cellulitis, Mr. Thomas Pickens's health deteriorated to a point of severe respiratory failure, requiring invasive mechanical ventilation. Thomas and Brenda Pickens filed a medical malpractice lawsuit against Dr. Thomas Leytham, and others, based on negligent care. The Pickenses offered both an initial

---

[1] The proceeding in Cause No. 04–13–00800–CV arises out of Cause No. 2013–CI–00666, styled *Thomas Pickens and Brenda Pickens v. John Choe, M.D., Thomas J. Leytham, M.D., VHS San Antonio Partners, LLC d/b/a Northeast Baptist Hospital, Baptist Hospital System, and Northeast Baptist Hospital*, pending in the 407th Judicial District Court, Bexar County, Texas, the Honorable Karen Pozza presiding. However, the orders complained of were signed by the Honorable David A. Canales, presiding judge of the 73rd Judicial District Court, Bexar County, Texas.

and supplemental expert report of Dr. Monroe Karetzky. On October 15, 2013, the trial court sustained Dr. Leytham's objections to Dr. Karetzky's expert report and granted his motion to dismiss. Appellant's sole complaint on appeal is that the trial court erred in dismissing her lawsuit based on the insufficiency of her section 74.351 expert report. TEX. CIV. PRAC. & REM. CODE ANN. § 74. 351 (West Supp. 2013). We overrule Appellant's complaint and affirm the trial court's order.

## FACTUAL BACKGROUND

Seventy-two year old Thomas Pickens was admitted to Northeast Baptist Hospital on July 28, 2011, under the care of Dr. John Choe, for treatment of persistent cellulitis. Based on other ailments, Mr. Pickens took a daily regimen of medications, including Klonopin and Desyrel. Dr. Choe's admission orders provided for Mr. Pickens to receive vancomycin (an antibiotic), a venous Doppler ultrasound, oxygen by nasal cannula, and Vicodin (an opiate pain reliever). The new medications were given in addition to Mr. Pickens's daily medication regimen.

On July 19, 2011, Mr. Pickens's medical records indicated his oxygen saturation, even with the increased oxygen concentration, was ninety-three to ninety-four percent.

On July 20, 2011, at both 8:17 a.m. and 11:36 a.m., the nurses reported Mr. Pickens was lethargic and asleep. On the day in question, Dr. Leytham was the on-call physician covering Dr. Choe's patients. Sometime around noon, the medical records substantiate Dr. Leytham was notified that Mr. Pickens was "unable to [be] arouse[d] except by noxious stimulation [and his] only response [was a] moan." Dr. Leytham did not order treatment or visit Mr. Pickens.

Shortly after noon, instead of personally examining Mr. Pickens, Dr. Leytham ordered several tests, including an arterial blood gas test. At 2:00 p.m., Mr. Pickens was drowsy and lethargic, and the blood gas sample revealed that Mr. Pickens was in severe respiratory failure and was not responding to non-invasive therapy. Following the blood gas test results, and over two

hours after the nurses' second report to Dr. Leytham, another physician at the hospital conducted an emergency intubation of Mr. Pickens. Mr. Pickens was ultimately transferred to the ICU for initiation of invasive mechanical ventilation. His x-rays showed signs consistent with either a left pleural effusion or consolidation. Mr. Pickens had a prolonged hospital stay and sustained additional complications including atrial fibrillation and a decubitus ulcer.

## PROCEDURAL HISTORY

On January 15, 2013, the Pickenses filed a health care liability suit against Dr. Leytham, Dr. Choe, and Northeast Baptist Hospital and timely filed expert reports and a supplemental report on causation. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351. On August 7, 2013, Dr. Leytham filed a motion to dismiss based on failure to prove causation in Dr. Karetzky's expert report. On August 23, 2013, Plaintiffs' Second Amended Petition changed party designation from Thomas and Brenda Pickens to Brenda Pickens, individually and as a representative of the estate of Thomas Pickens. On October 15, 2013, the trial court sustained Dr. Leytham's objections and granted his motion to dismiss. Brenda Pickens filed this appeal.

On appeal, Pickens complains that Dr. Karetzky's expert reports linked Dr. Leytham's omission to a two-hour delay in treatment, more invasive treatment, and more extensive course of treatment and, therefore, met the requirements of the Texas Civil Practice and Remedies Code chapter 74.

## STANDARD OF REVIEW

We review a trial court's grant or denial of a motion to dismiss under section 74.351 for an abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *Jones v. King*, 255 S.W.3d 156, 158 (Tex. App.—San Antonio 2008, pet. denied) (mem. op.). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d

48, 52 (Tex. 2002) (per curiam); *accord Peterson Reg'l Med. Ctr. v. O'Connell*, 387 S.W.3d 889, 892 (Tex. App.—San Antonio 2012, pet. denied).

**REQUIREMENTS UNDER SECTION 74.351**

Chapter 74 requires a claimant asserting a health care liability claim serve one or more expert reports addressing the conduct of each physician or health care provider against whom a health care liability claim has been asserted. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a).[2] Section 74.351(l) requires a trial court dismiss a plaintiff's claims for failure to file a sufficient expert report "*only if* . . . the report does not represent an objective good faith effort to comply with [the statutory requirements]." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(l) (emphasis added); *see also Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013); *Loaisiga v. Cerda*, 379 S.W.3d 248, 260 (Tex. 2012). The expert report must provide a fair summary of the expert's opinions, at the time the report is made, with regard to (1) the applicable standards of care, (2) breaches of those standards of care, and (3) the causal relationship between the breaches of those standards of care and the injury, harm, or damages alleged. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); *Potts*, 392 S.W.3d at 630; *Scoresby v. Santillan*, 346 S.W.3d 546, 555–56 (Tex. 2011). "A report that satisfies these requirements, even if as to one theory only, entitles the claimant to proceed with a suit against the physician or health care provider." *Potts*, 392 S.W.3d at 630.

**A.     Arguments of the Parties**

Pickens contends that Dr. Leytham's complaint "cherry-picks" a single sentence from the report and, thus, mischaracterizes the content of Dr. Karetzky's original and supplemental reports

---

[2] The current version of the statute applies to suits filed on or after September 1, 2013. Act of May 22, 2013, 83d Leg., R.S., ch. 870, § 3(b), sec. 74.351(a), Tex. Sess. Law. Serv. 2220, 2220 (West). Because this suit was filed before September 1, 2013, the former version of the statute applies to the instant appeal. *See id.* Accordingly, all citations to section 74.351 in this opinion are to the former version.

as to causation. Dr. Leytham counters that Dr. Karetzky's reports failed to explain the basis for his causation opinions and did not explain how his alleged breaches in the standard of care caused Mr. Pickens's injuries. We agree with Dr. Leytham.

Because Dr. Leytham does not challenge Dr. Karetzky's qualifications, the standard of care and the breach of that standard, our analysis focuses on his opinion on causation as set forth in his report.

## B.     Requirements of a Section 74.351 Expert Report

An expert report serves two purposes: (1) it informs the defendant of the specific conduct being questioned, and (2) it provides a basis for the trial court to conclude whether the claim has merit. *Scoresby*, 346 S.W.3d at 556; *Leland v. Brandal*, 257 S.W.3d 204, 206–07 (Tex. 2008); *Palacios*, 46 S.W.3d at 879. Although the four corners of the report need not "marshal all the plaintiff's proof" or meet summary judgment proof, the report must do more than merely state the expert's conclusions about the standard of care, breach, and causation. *Bowie Mem'l*, 79 S.W.3d at 52; *Cook v. Spears*, 275 S.W.3d 577, 585 (Tex. App.—Dallas 2008, no pet.); *Hutchinson v. Montemayor*, 144 S.W.3d 614, 617 (Tex. App.—San Antonio 2004, no pet.).

## B.     Challenges to Dr. Monroe Karetzky's Expert Report

On appeal, Dr. Leytham challenged the adequacy of Dr. Karetzky's opinion on causation contained within his expert report. For a more complete analysis on causation, a brief understanding of the alleged standard of care and breach is necessary.

### 1.     *Standard of Care*

Identifying the standard of care is essential because whether a defendant breached his duty "cannot be determined absent specific information about what the defendant should have done differently." *Palacios*, 46 S.W.3d at 880. The expert report need only provide "'something less than a full statement of the applicable standard of care and how it was breached.'"

*Fagadau v. Wenkstern*, 311 S.W.3d 132, 139 (Tex. App.—Dallas 2010, no pet.) (quoting *Palacios*, 46 S.W.3d at 880). Section 74.351(r)(6) requires the report to inform the defendant of the applicable standard of care and how such standard was not met. *Bowie Mem'l*, 79 S.W.3d at 53.

Here, Dr. Karetzky's report provides as follows:

> With regard to Dr. Leytham, the standard of care called for him to act more quickly in referring Mr. Pickens to the ICU for treatment of his respiratory depression. Upon being notified of Mr. Pickens's respiratory depression, rather than ordering the lab tests that he did, Dr. Leytham should have ordered Mr. Pickens immediately sent to the ICU for administration of opiate antagonists and other necessary treatment determined by ICU physicians.
>
> . . . .
>
> Dr. Thomas Leytham, the on-call physician, also breached the standard of care by failing to physically evaluate Mr. Pickens—instead giving only telephone orders for tests that delayed his transfer to the ICU, where he needed to be receiving treatment—and transferring him to the ICU in a timely fashion.

Dr. Karetzky's report clearly sets forth what care was expected from Dr. Leytham and how he failed to provide such care. *Palacios*, 46 S.W.3d at 880. Dr. Karetzky opines Dr. Leytham should have sent Mr. Pickens to the ICU; and, instead, Dr. Leytham breached that standard by ordering, via phone, additional tests further delaying treatment. Dr. Karetzky further states Dr. Leytham's failure to physically evaluate Mr. Pickens also fell below the applicable standard of care and caused further delay in Mr. Pickens receiving the needed treatment. *Bowie*, 79 S.W.3d at 52–53; *Palacios*, 46 S.W.3d at 880; *Cook*, 275 S.W.3d at 585.

Given the standard of care element is adequately described by Dr. Karetzky and that breach is not an issue, we turn to whether the report sufficiently ties a breach of the standard of care with the alleged injuries to prove causation.

### 2. Causation

There are no "magic words" required to establish causation. *Bowie Mem'l*, 79 S.W.3d at 52–53; *Hutchinson*, 144 S.W.3d at 617–18. An expert report, however, must provide a fair summary of the expert's opinions on the causal relationship of a breach from a standard of care to

the harm claimed with enough specificity to allow the trial court to conclude that the plaintiff's claims have merit. *Palacios*, 46 S.W.3d at 878; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). To qualify as a good faith effort in describing that causal relationship, the report must do more than merely state conclusions. It must explain the basis for the expert's causation opinions by linking the expert's conclusions to the facts. *Bowie Mem'l*, 79 S.W.3d at 52; *Peterson Reg'l*, 387 S.W.3d at 893. More specifically, this court explained that a report is inadequate if "it fail[s] to explain how the breach caused the injury alleged." *Jones*, 255 S.W.3d at 160.

Applying this standard, an expert report is insufficient when it contains only a series of repetitious or conclusory statements regarding causation. *See Bowie Mem'l*, 79 S.W.3d at 53; *Jones*, 255 S.W.3d at 160 (quoting *Bowie Mem'l*, 79 S.W.2d at 52) (adding that an expert must "'explain the basis of his statements to link the conclusions to the facts'").

Here, Dr. Karetzky's initial report provides as follows:

> Dr. Leytham's failing to examine Mr. Pickens and ordering tests over the phone instead of ordering Mr. Pickens to the ICU caused another approximately two-hour delay in his receiving effective treatment. In reasonable probability, this significantly contributed to the need for invasive mechanical ventilation.

Additionally, his supplemental report opined as follows:

> As noted by my initial report, Dr. Leytham failed to examine Mr. Pickens, instead simply ordering multiple tests over the telephone. One of those tests—for arterial blood gases—revealed his highly elevated $pCO_2$ that was indicative of severe respiratory depression. But an in-person examination and review of Mr. Pickens's medications, including Vicodin, would likely have revealed his respiratory depression and its cause much earlier; in fact, two hours earlier. Dr. Leytham could have then prescribed opiate antagonists or ordered Mr. Pickens to the ICU. Again, a reasonable physician, if notified of respiratory depression in a patient receiving opiate medication and synergistic drugs would prescribe opiate antagonists to alleviate this respiratory depression.
>
> Again, in instances of respiratory failure, restoring breathing as quickly as possible is essential to avoid or ameliorate permanent damage. Oxygen starvation will quickly turn deadly, as tissues die for want of sufficient oxygen. As noted in my initial report, by the time Mr. Pickens was sent to the ICU, he was in fulminating respiratory failure. His breathing needed to be restored and restored quickly in

order to save his life. As a result, invasive mechanical ventilation—forcing oxygen into the lungs—was the only sure option. Again, opiate antagonists would not be guaranteed to restore adequate respiration immediately, and, given his critical stage, there was not time to see if they would work. As a result, invasive mechanical ventilation—forcing oxygen into the lungs and carbon dioxide out— was the only option left to restore his breathing. Dr. Leytham's failure to examine Mr. Pickens and thus discover his condition earlier prevented anything short of mechanical ventilation from being effective.

Dr. Karetzky sets forth his opinion that an in-person examination—as opposed to a telephonic inquiry—coupled with Dr. Leytham's review of Mr. Pickens's medications, would likely have revealed Mr. Pickens's respiratory depression. Dr. Karetzky also concluded that Dr. Leytham's actions led to a two-hour delay and exacerbated Mr. Pickens's respiratory depression. He further concluded that it was Dr. Leytham's failure to act sooner that prevented Mr. Pickens from receiving opiate medication and synergistic drugs.

Although Dr. Karetzky opined that the two-hour delay prevented anything short of "mechanical ventilation," he does not conclude that an earlier use of the medications would have negated the need for invasive mechanical ventilation. To the contrary, Dr. Karetzky specifically states that "opiate antagonists would not be guaranteed to restore adequate respiration." By this statement, Dr. Karetzky admits he cannot conclude that if Dr. Leytham had not breached the standard of care, the outcome would have been any different. *See Jones*, 255 S.W.3d at 160. For purposes of causation, section 74.351(r)(6) requires Dr. Karetzky to affirmatively link Dr. Leytham's alleged breach to Mr. Pickens's need for mechanical ventilation. Dr. Karetzky admittedly cannot do so.

## C.    Conclusion

Dr. Karetzky's only affirmative link between the alleged negligence—failing to physically examine Mr. Pickens—with the need for invasive mechanical ventilation is that one came before the other. He does not reach the threshold determination that Mr. Pickens's injuries would not

have occurred absent Dr. Leytham's failures.   We, therefore, conclude the trial court did not abuse

its discretion in granting the motion to dismiss and the trial court's order is affirmed.

Patricia O. Alvarez, Justice