

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-13-00559-CV

**HILL COUNTRY SAN ANTONIO MANAGMENT SERVICES, INC.**
a.k.a. Hill Country Achievement,
Appellant/Cross-Appellee

v.

Rachel **TREJO** as next friend of Rene Trejo,
Appellee/Cross-Appellant

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CI-20045
Honorable Peter A. Sakai, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Sandee Bryan Marion, Justice
Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  February 12, 2014

AFFIRMED

On December 14, 2012, Appellee Rachel Trejo filed suit as Next Friend of her adult child,

Rene Trejo, asserting that Hill Country Achievement Center breached the standard of care

applicable to an adult day-care facility by failing to monitor or assist Rene Trejo as he exited a van

after a facility outing.  Hill Country originally denied the facility was a health care provider under

the Texas Medical Liability Act (TMLA) and subsequently requested Trejo amend her pleadings

to assert a cause of action not sounding in medical negligence.  Trejo complied with Hill Country's

request.  On July 22, 2013, Hill Country filed a motion to dismiss based on Trejo's failure to

provide an expert report as required by Chapter 74. Trejo filed a response and requested sanctions. On August 5, 2013, the trial court denied the motion to dismiss and the motion for sanctions. Because Hill Country is not a health care provider and the alleged injuries do not constitute a health care liability claim, we affirm the trial court's order.

### FACTUAL AND PROCEDURAL BACKGROUND

**A.     Factual Background**

Hill Country is a "Day-Hab" facility that provides care for adult individuals. Their services include activities at the center and day trips such as bowling, delivering meals on wheels, working at the food bank, and volunteering at animal shelters.

Rachel Trejo utilized the adult day-care services provided by Hill Country for her adult son, Rene. Rene was diagnosed with Severe Mental Retardation/Autism, Downs Syndrome, Mood Disorder NOS, Psychotic Disorder NOS, and has a pacemaker. He has suffered with mobility issues his entire life and requires assistance entering and exiting vehicles.

On July 21, 2011, Trejo took her son to Hill Country where the day's plans included a bowling outing. A Hill Country employee transported her son to the bowling alley in a van not outfitted for disabled passengers. The van returned to Hill Country at approximately 2:45 p.m. and was parked in Hill Country's parking lot. After an undetermined length of time, a co-worker noticed Rene lying on the pavement outside the van. He had a severely broken leg resulting in an eight-week hospitalization, three ICU stays, and over $320,000.00 in medical bills. Trejo asserts that, although Hill Country was aware of her son's physical and mental limitations, Hill Country employees left Rene unassisted and he fell and sustained injuries.

**B.**    **Procedural History**

   1.    *Notice of Health Care Liability Claim*

On August 10, 2012, Trejo sent written notice to Hill Country that she intended to assert a health care liability claim under Chapter 74. TEX. CIV. PRAC. & REM. CODE ANN. § 74.051(a) (West 2011). The record indicates Trejo was notified of the incident by a nurse and information regarding the incident was obtained from a report issued by the Texas Department of Family and Protective Services. Approximately two months later, Trejo received a letter from Hill Country's automobile carrier denying liability, but the carrier ultimately tendered $2,500.00 in Personal Injury Protection coverage toward Rene's medical bills.

   2.    *Plaintiff's Original Petition*

On December 14, 2012, Trejo filed her Original Petition alleging general negligence and a Chapter 74 medical malpractice claim. The petition asserted Hill Country's legal status was uncertain at the time of the filing. In an abundance of caution, Trejo pled that Hill Country "was a medical provider for purposes of Chapter 74, and as such, had a duty to adhere to the standard of care applicable to the provider of medical services," including those necessary to assist in exiting and entering vehicles. Trejo asserted compliance with section 74.051(a). *Id.* The petition also alleged Hill Country's negligence as follows:

> (1)    failing to provide supervision in accordance with the applicable standard of care as a reasonably prudent Adult Day-care facility would have under the same or similar circumstances;
> (2)    failing to monitor;
> (3)    failing to provide assistance in and out of the van;
> (4)    failing to keep [Rene] from injury by leaving him unattended; [and]
> (5)    failing to otherwise render health care services in accordance with the applicable standard of care as [a] reasonably prudent day-care facility would have under the same or similar circumstances.

### 3. *Hill Country's Original Answer*

On January 25, 2013, Hill Country filed an answer denying its status as a "Health Care Provider" and, instead, contended the incident was an "unavoidable accident" or "unavoidable consequence." Hill Country also alleged, that "in the unlikely event" the trial court determined Hill Country to be a health care provider, any damages were limited in accordance with section 74.301. TEX. CIV. PRAC. & REM. CODE ANN. § 74.301.

### 4. *Plaintiff's First and Second Amended Petitions*

Trejo's First and Second Amended Petitions asserted Hill Country breached the standard of care applicable to a health care provider at an Adult Day-care facility, and incorporated and attached the section 74.051(a) notice sent to Hill Country on August 10, 2012.

### 5. *Hill Country Notifies Trejo that 120th Day Passed and Extends Opportunity to Amend Pleadings*

In a letter dated April 24, 2013, the 131st day after the original petition was filed, Hill Country notified Trejo that the 120-day deadline for serving expert reports had passed and requested Trejo "amend [her] pleadings and remove [her] medical malpractice claim against" Hill Country. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351.[1] On the date the letter was filed, Hill Country's live pleading was its original answer denying it was a health care provider.

### 6. *Plaintiff's Third and Fourth Amended Petitions Deleting Chapter 74 Heading*

On May 15, 2013, Trejo filed her Third Amended Petition deleting the medical malpractice cause of action, but continued to assert her compliance with all notice provisions of section 74.051(a). TEX. CIV. PRAC. & REM. CODE ANN. § 74.051(a). Trejo filed a Fourth Amended

---

[1] The current version of the statute applies to suits filed on or after September 1, 2013. Act of May 22, 2013, 83d Leg., R.S., ch. 870, § 3(b), sec. 74.351(a), Tex. Sess. Law. Serv. 2220, 2220 (West). Because this suit was filed before September 1, 2013, the former version of the statute applies to the instant appeal. *See id.* Accordingly, all citations to section 74.351 in this opinion are to the former version.

Petition correcting Hill Country's name, but her remaining allegations and notice provisions remained unchanged.

7.     *Hill Country's First Amended Answer Asserting its Status as Health Care Provider*

After multiple depositions and extensive discovery, on July 19, 2013, Hill Country filed its First Amended Answer pleading that it **was** a health care provider, as that term is defined by Chapter 74, and also reiterated its demand for limitation of liability under Chapter 74.

8.     *Plaintiff's Fifth Amended Petition Deleting all Chapter 74 Claims*

Trejo's Fifth Amended Petition, filed on July 22, 2013, deleted any reference to her chapter 74 claims, including compliance with all notice provisions, but still asserted that Hill Country failed to act as a reasonably prudent adult day-care facility and to provide the proper assistance Rene required to accommodate his level of physical and mental disabilities.

9.     *Hill Country's Motion to Dismiss and Trejo's Motion for Sanctions*

On the same day Trejo filed her Fifth Amended Petition, Hill Country filed a motion to dismiss based on Trejo's failure to provide an expert report pursuant to section 74.351 of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351. The motion was accompanied by the following:

> (1)     an affidavit confirming Hill Country was a facility annually certified by the Texas Department of Aging Disability Services,
> (2)     an affidavit that Hill Country provided services for those with intellectual disabilities through the 1915(c) Medicaid waiver program, and
> (3)     deposition testimony supporting that Hill Country was a medical facility as defined by Chapter 74.

In response, Trejo moved for sanctions and requested Hill Country's pleadings be stricken based on Hill Country amending its pleadings to assert it was a health care provider four months after the expert deadline expired. The trial court denied relief to both parties in an order signed on August 5, 2013 and this appeal ensued.

**JUDICIAL ADMISSION**

On appeal, Hill Country argues that it is a health care provider under the TMLA and that the nature of Trejo's alleged claim falls within the Act's definition of a health care liability claim. Trejo counters that Hill Country's Original Answer, its live pleading when the motion to dismiss was filed, constitutes a judicial admission that it was ***not*** a health care provider. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000) (holding that plaintiff's pleadings "contained numerous clear and unequivocal assertions of fact constituting judicial admissions that [the defendant] was a 'health care provider' and that [plaintiff's] claim was a 'health care liability claim'"). Hill Country maintains that only questions of fact can be judicially admitted and, because the determination regarding whether an entity is a health care provider is a question of law, Hill Country's answer cannot constitute a judicial admission. *See Holguin v. Laredo Reg. Med. Ctr., L.P.*, 256 S.W.3d 349, 352 (Tex. App. —San Antonio 2008, no pet.); *H.E. Butt Grocery Co. v. Pais*, 955 S.W.2d 384, 389 (Tex. App.—San Antonio 1997, no pet.).

Because we decide the case on other grounds, we need not address whether Hill Country's answer constituted a judicial admission. TEX. R. APP. P. 47.1. We will address whether the trial court properly denied Hill Country's motion to dismiss.

**STANDARD OF REVIEW**

Generally, an appellate court reviews a district court's ruling on a motion to dismiss under Chapter 74 of the Texas Civil Practices and Remedies Code for an abuse of discretion. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877–78 (Tex. 2001). However, when the resolution of an issue on appeal requires the interpretation of a statute, an appellate court applies a de novo standard of review. *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012); *Tex. Laurel Ridge Hosp., L.P. v. Almazan*, 374 S.W.3d 601, 604 (Tex. App.—San Antonio 2012, no pet.). Thus, in

determining whether Hill Country is a "health care provider" for the purpose of chapter 74, we apply a de novo standard of review. *Williams*, 371 S.W.3d at 177.

When interpreting a statute, an appellate court attempts to ascertain and give effect to the intent of the legislature. *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex. 2007). Where the statutory text is clear, an appellate court presumes the words chosen are "'the surest guide to legislative intent.'" *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010) (quoting *Entergy Gulf States v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009)). In doing so, we first look to the definitions prescribed by the legislature and any technical or particular meaning the words have acquired. *See* TEX. GOV'T CODE ANN. § 311.011(b) (West 2013). Only after considering the legislature's definitions does an appellate court look to the words' plain and common meanings, unless the legislature's "contrary intention is apparent from the context" or such a construction would lead to "absurd results." *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008).

## HEALTH CARE LIABILITY CLAIMS UNDER CHAPTER 74

Only claims that assert a health care liability claim under the TMLA are required to file an expert report under section 74.351. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). Section 74.001(a)(13) defines a health care liability claim as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). A "health care provider" is further defined as "any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care, including: (i) a registered nurse, (ii) a dentist, a podiatrist, (iii) a pharmacist, (iv) a chiropractor, an

optometrist, [or] (v) a health care institution." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12); *but see San Antonio Extended Med. Care, Inc. v. Vasquez*, 327 S.W.3d 193, 197– 98 (Tex. App.—San Antonio 2010, no pet.) (reiterating the list is not exclusive).

Whether a claim falls within this definition requires an examination of "the gravamen of the claim, not the form of the pleadings." *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 664 (Tex. 2010) (citing *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 847 (Tex. 2005)). The Texas Supreme Court set forth a three prong test to satisfy this definition: "(1) a physician or health care provider must be a defendant; (2) the claim . . . must concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care;" and (3) the defendant's act or omission complained of must proximately cause the injury to the claimant." *Williams*, 371 S.W.3d at 179–80; *accord Marks*, 319 S.W.3d at 664.

For Trejo's claims to fall under the umbrella of a medical malpractice claim and require the timely filing of an expert report, Hill Country must be ***both*** a health care provider ***and*** Rene's injuries must have resulted from either treatment, lack of treatment, or a departure from acceptable standards of care as defined by section 74.001(a)(13). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12), (13).

We first address whether Hill Country is a health care provider as defined by section 74.001(a)(12). *Id.*

**A.      Health Care Provider**

*1.      Arguments of the Parties*

a.      Trejo Asserts Hill Country is Not a Health Care Provider

Trejo contends that Hill Country is an adult day-care facility and not within the protections of Chapter 74. We agree.

Section 74.001(a)(18) specifically provides for an "[i]ntermediate care facility" as "a licensed public or private institution to which Chapter 252, Health and Safety Code, applies." *Id.* § 74.001(a)(18). With respect to licensing, Trejo contends that although Hill Country points to the Department of Aging and Disability Services (DADS) as a licensing agency, the memorandum to which Hill Country refers was for a different facility than the facility in which her son was injured. In distinguishing Hill Country from an intermediate care facility, Trejo argues that Hill Country is an adult day-care facility governed by Chapter 103 of the Human Resources Code, "Adult Day-care Act." TEX. HUM. RES. CODE § 103.003. Unlike the Health and Safety Code, the Human Resource Code does not contain any medical or health care personnel training or qualifications requirements. *Id.* § 103.003(2).

As further evidence of Hill Country's lack of health care provider status, Trejo points to the deposition of Mabel Arteaga-Zielinksi, the individual in charge of day-to-day operations at Hill Country. In her deposition, Arteaga-Zielinksi testified (1) Hill Country employed no medical personnel, provided no medical services, had no state licensed staff of any kind; (2) Hill Country provided services including assistance in acquiring life skills, day trips, board games, lunch, and recreational activities; and (3) Hill Country referred to each of the individuals at the center as "consumers," not patients.

### b. Hill Country Asserts the Agency is a Health Care Provider

Hill Country argues this court should look at the facts surrounding the underlying claim to determine its true character and whether it is actually a health care provider. *Gomez v. Matey*, 55 S.W.3d 732, 735 (Tex. App.—Corpus Christi 2001, no pet.). Hill Country argues the facts show that it falls under the TMLA's definitions of "health care providers" and "health care institutions."

Hill Country first points to the TMLA definition which provides that "health care provider[s]" include "any person, partnership, professional association, corporation, facility, or

institution *duly licensed*, certified, registered, or chartered by the State of Texas to provide health care, including . . . a health care institution." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12)(A) (emphasis added). Hill Country then directs us to the TMLA's definition of health care institution as "a home *and* community-based services waiver program for persons with mental retardation adopted in accordance with Section 1915(c) of the federal Social Security Act." TEX. CIV. PRAC. & REM. CODE ANN § 74.001(a)(11)(I) (emphasis added). Hill Country argues that its annual certification by DADS, a Texas State Agency, is proof that their agency is "duly licensed." Hill Country then concludes that because it provides services for persons with mental retardation and is a duly licensed institution, the claims asserted by Trejo must fall within the framework of the TMLA. We disagree.

### 2. Analysis

In determining whether a facility is "provid[ing] health care" as prescribed by section 74.001(a)(12), we look at the *essence of the underlying claim*, not merely the words contained within the pleadings. TEX. CIV. PRAC. & REM. CODE. ANN. § 74.001(a)(12); *Marks*, 319 S.W.3d at 664; *accord Harris Methodist Fort Worth v. Ollie*, 342 S.W.3d 525, 527 (Tex. 2011); *Yamada v. Friend*, 335 S.W.3d 192, 197 (Tex. 2010). Here, the question is whether Hill Country is a provider with regard to medical care, treatment, or confinement. TEX. CIV. PRAC. & REM. CODE. ANN. § 74.001(a)(10).

We are also mindful that completely outside of the confines of the Civil Practice and Remedies Code, the Human Resources Code defines an "adult day-care center" as a "facility that provides services under an adult day-care program on a daily or regular basis but not overnight to four or more elderly or handicapped persons who are not related by blood, marriage, or adoption to the owner of the facility." TEX. HUM. RES. CODE. § 103.003(1); *see id.* § 103.007 (requiring an adult day-care licensee applicant to show "(1) the ability to comply with the requirements of the

department; (2) responsible management; and (3) qualified professional staff and personnel"). The code further defines an "adult day-care program" as "a structured, comprehensive program that is designed to meet the needs of adults with functional impairments through an individual plan of care by providing health, social, and related support services in a protective setting." *Id.* at § 103.003(2).

The gravamen of each of Trejo's petitions allege her son was injured due to the lack of supervision, monitoring, and assistance appropriate for an individual of his physical and mental capabilities. Unlike the psychiatric hospital in *Texas West Oaks Hospital, L.P. v. Williams*, Hill Country is not providing medical care, treatment, or confinement. 371 S.W.3d at 177. Rene was brought to the center for a couple of hours at a time; he was neither confined nor given any medical care or treatment. Hill Country employees, specifically the employee to which Rene was assigned that day, are not registered nurses and do not hold any type of medical training. Hill Country is not overseen by any medical professionals and does not provide any health care services. Accordingly, Hill Country does not fall under the "health care provider" as defined in Chapter 74. TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12).

Even assuming Hill Country is a health care provider, "[t]he simple fact that an injury occurred on a health care provider's premises is not enough." *Good Shepherd Med. Ctr.—Linden, Inc. v. Twilley*, No. 06-12-00098-CV, 2013 WL 772136, at *5 (Tex. App.—Texarkana Mar. 1, 2013, pet. denied). The injuries sustained by Trejo's son must still qualify as a health care liability claim under the Act. We therefore turn to Chapter 74 for further guidance.

**B.      Health Care Claim**

Trejo contends her son's injuries did not result from a breach of medical, health care, or safety codes. TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). We agree.

*1.      Injuries Occurring Outside of a Health Care Facility*

With regard to Rene's injuries occurring outside the facility, Hill Country contends his injuries were sustained during the course of transportation and are, therefore, health care liability claims. *See Sherman v. HealthSouth Specialty Hosp.*, 397 S.W.3d 869, 873 (Tex. App.—Dallas 2013, pet. denied) (failing to properly secure invalid passenger being transported in a van before transporting her from a clinic to her home implicates acceptable standards). In *Sherman*, the court held it was HealthSouth's duty to insure that Sherman was "untouched by danger" or "secure from danger, harm, or loss" during transport from the clinic to her home. *Id.*; *see also Omaha Healthcare Ctr., LLC v. Johnson* 344 S.W.3d 392, 395 (Tex. 2011) (concluding that failure to protect patient from spider bite was failure to protect from danger or harm). The distinct difference between Trejo's and Sherman's claims rests on the types of services being provided by the agency. HealthSouth was taking Sherman to her residence as part of her treatment plan. *Sherman*, 397 S.W.3d at 874. To the contrary, Rene was being taken on "an outing" that was separate and distinct from any medical treatment or doctor-prescribed plan. Accordingly, we cannot say that Hill Country's services outside of its facility, including transportation to and from daily activities, implicated standards associated with the medical care of Trejo's son.

*2.      Injury a Result of Treatment of Departure from Acceptable Standards*

Hill Country contends Trejo's allegations flow from alleged breaches in Hill Country's treatment, lack of treatment, or even a departure to accepted standards of medical care. *Marks*, 319 S.W.3d at 662; *see also Doctors Hosp. at Renaissance, Ltd. v. Mejia*, No. 13-12-00602-CV, 2013 WL 4859592, at *3 (Tex. App.—Corpus Christi Aug. 1, 2013, no pet.) (mem. op.) (holding visitor's injuries were a "garden variety" slip-and-fall after being directed by hospital employee to walk over freshly waxed walkway on the hospital premises). Yet, Trejo asserts her son suffered injuries as a result of ordinary negligence: (1) Hill Country's employee left him in a hot car without

- 12 -

making sure he made it into the facility, and (2) Hill Country's employee allowed her son to depart the vehicle unattended and left him laying with a broken leg on the hot pavement for an unknown period of time.

In *Texas West Oaks Hospital, LP v. Williams*, the Texas Supreme Court provided a better understanding of what actions fall under health care liability claims. 371 S.W.3d at 179–80. Williams, an employee at an inpatient psychiatric hospital, was assigned to supervise a patient that could be removed from the psychiatric unit only by direct order of a physician. *Id.* at 175. When Williams took the patient to an outdoor, enclosed space, the patient attacked Williams resulting in injuries to Williams and, ultimately, the death of the patient. *Id.* Williams sued the facility alleging the facility failed to properly train him and provide a safe working environment. *Id.* In holding that Williams's claims were health care liability claims, the court relied on the necessary training regarding working with potentially violent psychiatric patients, providing a safe workplace at a medical health hospital, and safety standards required for working with potentially violent schizophrenic patients. *Id.* at 176–77. As such, Williams' claims were Chapter 74 health care claims based on alleged departures from accepted standards of health care and safety. *Id.*

Unlike the injuries sustained in *Williams*, Rene's injuries did not result from an employee's failure to follow doctor's orders on how to "handle" Rene or where to take Rene. Instead, Trejo argued Hill Country's employee was negligent by (1) leaving her son in the van when it was unsafe to do so, (2) failing to make sure her son departed the vehicle safely, and (3) leaving him laying with a broken leg on the hot pavement for an unknown period of time.

Rene's injuries were sustained outside the Hill Country facility and were not a result of a breach of medical, health care, or safety standards. We, therefore, conclude Trejo's claims sound in general negligence and are not health care liability claims under Chapter 74.

## C.    Conclusion

The services Hill Country provided to Rene did not include medical care, treatment, or confinement as required by the Civil Practice and Remedies Code.  Instead, we conclude that Hill Country is more properly defined as an adult day-care facility under the Human Resources Code. Accordingly, Hill Country is not a "health care provider" as defined in Chapter 74.  TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12).

Moreover, based on the injuries suffered by Rene, and alleged by Trejo, we cannot conclude the claims resulted from Hill Country's treatment, lack of treatment, or even a departure from accepted standards of medical care.  As such, the claims are not health care liability claims under the TMLA.  TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13).

Accordingly, because Hill Country is not a health care provider under Chapter 74, and the alleged injuries were not a health care liability claim, the trial court did not err in failing to dismiss Trejo's suit for failure to file a timely expert report.

### TREJO'S CROSS-APPEAL:  TRIAL COURT'S DENIAL OF SANCTIONS

An appellate court reviews a trial court's sanctions determination for abuse of discretion. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007).  The test is whether the "court acted without reference to any guiding rules and principles" or whether the act was "arbitrary or unreasonable." *Id.*  Section 10.004 provides that the trial court may order a party to pay a sanction for violation of section 10.001 for "the amount of the reasonable expenses incurred by the other party because of the filing of the pleading or motion, including reasonable attorney's fees."  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.001, .004 (West 2002); *id.* § 9.011("the signing of a pleading . . . constitutes a certificate by the signatory to the signatory's best knowledge, information, and belief . . . .").

Trejo asks this court to conclude the trial court abused its discretion in failing to award sanctions.  Although the record suggests Hill Country's motives were less than admirable, and

their pleadings did not abide by the spirit of section 9.011, there is no evidence in the record to show that the trial court's denial was arbitrary or unreasonable. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 9.011; *Henry*, 221 S.W.3d at 614. Accordingly, we overrule Trejo's cross-appeal.

Having overruled all issues on appeal, we affirm the trial court's order.

Patricia O. Alvarez, Justice