

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00728-CV

**METHODIST HEALTHCARE SYSTEM OF SAN ANTONIO, LTD., L.L.P.** d/b/a
Northeast Methodist Hospital, Sarah I. Back, R.N., and Ismael Tres Sosa, M.D.,
Appellants

v.

Rita **REMINGTON**, Individually and as Independent Executor of the Estate of Alvin Charles
Hall, Deceased, and Karl Hall, Individually,
Appellees

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2016-CI-11703
Honorable Karen H. Pozza, Judge Presiding

Opinion by:   Marialyn Barnard, Justice

Sitting:       Sandee Bryan Marion, Chief Justice
              Marialyn Barnard, Justice
              Rebeca C. Martinez, Justice

Delivered and Filed:  August 15, 2018

REVERSED AND REMANDED

This is an accelerated appeal in which the trial court denied appellants, Methodist

Healthcare System of San Antonio, Ltd., L.L.P. d/b/a Northeast Methodist Hospital, Sarah I. Back,

R.N., and Ismael Tres Sosa, M.D.'s motions to dismiss health care liability claims filed by

appellees, Rita Remington, Individually and as Independent Executrix of the Estate of Alvin

Charles Hall, Deceased, and Karl Hall, Individually.  On appeal, appellants contend the trial court

abused its discretion in denying the motions to dismiss because the expert report submitted by Rita

and Karl is conclusory and speculative as to the causation element of their health care liability claims. We reverse the trial court's orders denying the motions to dismiss and remand the cause for further proceedings consistent with this opinion.

## BACKGROUND

Alvin Charles Hall went to the emergency room at Northeast Methodist Hospital complaining of nausea and vomiting. After the emergency room staff conducted an initial examination, Dr. Sosa was contacted to provide medical care and treatment. The record reflects that throughout the night and early morning hours, Alvin continued to experience distress and discomfort. A naso-gastric tube was ultimately ordered and inserted into Alvin's stomach to drain gastric fluid; however, Alvin did not experience any relief. The next morning, Alvin's cannister of accumulated fluid was changed by Nurse Back. Approximately thirty minutes later, Alvin "coded" and ultimately passed away without ever being examined by Dr. Sosa. It was ultimately determined Alvin died of cardiac arrest.

After his death, Alvin's children, Rita and Karl, sued Northeast Medical Hospital, Nurse Back, and Dr. Sosa for the care Alvin received at the hospital. According to Rita and Karl, Nurse Back was negligent in her treatment of Alvin because at no point did she perform a comprehensive nursing assessment, make an accurate nursing diagnosis, develop a plan of care, or implement nursing care. Rita and Karl further alleged Northeast Medical Hospital was vicariously liable for Nurse Back's actions. With respect to Dr. Sosa, Rita and Karl asserted Dr. Sosa was negligent in failing to timely examine Alvin and provide proper medical care and treatment.

Rita and Karl then served an initial expert report prepared by Lige B. Rushing, Jr., M.D. on the hospital, Nurse Back, and Dr. Sosa pursuant to section 74.351(a) of the Texas Civil Practice and Remedies Code ("the Code"). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2017). Dr. Rushing's report included his qualifications as an expert, provided a timeline of Alvin's

care at the hospital, and included sections discussing the standards of care, alleged breaches, and causation elements of the theories of liability alleged in Rita and Karl's petition. The hospital, Nurse Back, and Dr. Sosa filed objections to Dr. Rushing's report and motions to dismiss. *See id.* § 74.351(a), (b). The trial court found Dr. Rushing's report insufficient as to the element of causation, but granted Rita and Karl a thirty-day extension to cure the deficiency. *See id.* § 74.351(c). Thereafter, Rita and Karl served the hospital, Nurse Back, and Dr. Sosa with a supplemental expert report by Dr. Rushing. The hospital, Nurse Back, and Dr. Sosa again filed objections to the supplemental report and moved to dismiss, asserting the supplemental report was still deficient with regard to the element of causation. *See id.* § 74.351(a). The trial court overruled the objections and denied the motions to dismiss. Appellants subsequently perfected this interlocutory, accelerated appeal. *See id.* § 51.014(a)(9) (stating person may appeal interlocutory order that denies all or part of motion under Section 74.351(b), except appeal may not be taken from order granting extension).

## ANALYSIS

On appeal, appellants argue the trial court erred in denying the motions to dismiss, which challenged the sufficiency of Dr. Rushing's expert report. Specifically, appellants contend the expert report is insufficient because it is conclusory and speculative as to the causation element of the asserted health care liability claims.

### *Standard of Review*

We review a trial court's decision to grant or deny a motion to dismiss a health care liability lawsuit brought under Chapter 74 of the Texas Civil Practice and Remedies Code for an abuse of discretion. *Hill Country San Antonio Mgmt. Servs., Inc. v. Trejo*, 424 S.W.3d 203, 208 (Tex. App.—San Antonio 2014, pet. dism'd) (citing *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex.

2001)); *Peterson Regional Med. Ctr. v. O'Connell*, 387 S.W.3d 889, 892 (Tex. App.—San Antonio 2012, pet. denied). Under this standard, we may not substitute our judgment for that of the trial court with regard to factual matters. *See Bowie*, 79 S.W.3d at 52. "An abuse of discretion occurs when the trial court acts in an arbitrary or unreasonable manner and without reference to any guiding rules or principles." *Peterson Regional Med. Ctr.*, 387 S.W.3d at 892; *see also Bowie*, 79 S.W.3d at 52. A trial court also abuses its discretion if it fails to analyze or apply the law correctly. *Bowie*, 79 S.W.3d at 52; *Peterson Regional Med. Ctr.*, 387 S.W.3d at 892.

### *Applicable Law*

### *Expert Report Requirements*

Section 74.351(a) of the Code requires a plaintiff to serve each physician or health care provider against whom a health care liability claim is asserted an expert report and curriculum vitae of each expert within a specified time. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). The purpose of the report is: (1) to inform the defendant of the specific conduct called into question and (2) to provide a basis for the trial court to determine if the plaintiff's claims have merit. *Bowie*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 879. The statute defines a valid expert report as "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); *see Bowie*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 879.

If the report does not constitute a good faith effort to comply with the statutory requirements, then the trial court must grant the motion challenging the report and dismiss the claim with prejudice. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(1); *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *Bowie*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 879. To determine

whether a report constitutes a good faith effort, courts consider only the information within the four corners of the report and is prohibited from filling gaps by making inferences or guessing what the expert likely meant. *Rodriguez v. Walgreen Co.*, No. 03-14-00765-CV, 2016 WL 368772, at *2 (Tex. App.—Austin Jan. 27, 2016, no pet.) (mem. op.). The report need not encompass all of the plaintiff's proof, but it must include an opinion on each of the three elements identified by the statute: standard of care, breach and causal relationship. *Bowie*, 79 S.W.3d at 52; *Jones v. King*, 255 S.W.3d 156, 159 (Tex. App.—San Antonio 2008, pet. denied). The report cannot merely state the expert's conclusions about these elements, but must contain explanations of the basis of the expert's statements and link the expert's conclusions to the facts. *Jelinek v. Casas*, 328 S.W.3d 526, 539–40 (Tex. 2010) (citing *Bowie*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 878).

*Causation Requirement*

The only element of Dr. Rushing's expert report that appellants challenge on appeal is the element of causation. According to appellants, Dr. Rushing's opinion as to the causation element of their claims is conclusory and speculative because none of Dr. Rushing's statements explain how or why Dr. Sosa or Nurse Back's alleged breaches of the respective standards of care caused Alvin's death.

Recently, the Texas Supreme Court addressed the issue of causation in section 74.351(a) expert reports, stating: "Unquestionably, a plaintiff asserting a health care liability claim based on negligence, who cannot prove that her injury was proximately caused by the defendant's failure to meet applicable standards of care, does not have a meritorious claim." *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017). As such, a plaintiff asserting a health care liability claim must submit an expert report that sufficiently "explain[s], based on facts set out in the report, how and why the breach caused the injury." *Van Ness v. ETMC*

*First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015); *see Zamarripa*, 526 S.W.3d at 460; *Jelinek*, 328 S.W.3d at 539. The report does not have to prove proximate cause, but the expert cannot simply opine that the breach caused the injury. *Zamarripa*, 526 S.W.3d at 460; *Van Ness*, 461 S.W.3d at 142; *Jelinek*, 328 S.W.3d at 539. "Instead, the expert must go further and explain, to a reasonable degree, how and why the breach caused the injury" by linking the defendant's alleged failures to the plaintiff's injury. *Jelinek*, 328 S.W.3d at 539–40; *see Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245, 249 (Tex. App.—San Antonio 2004, no pet.) (noting expert report must explain causal connection between claimed omissions and injury). And although there are no "magic words" to establish causation, "the expert report must make a good-faith effort to explain, factually, how proximate cause is going to be proven." *Zamarripa*, 526 S.W.3d at 460.

### *Application*

Turning to Dr. Rushing's supplemental report, the report begins by describing Alvin's condition when he arrived at the emergency room, stating that Alvin was vomiting. Dr. Rushing highlights that Alvin "was morbidly obese [with] a history of hypertension, dyslipidemia, diabetes, coronary artery disease with the placement of two stents and peripheral vascular disease." Dr. Rushing further opines that due to Alvin's "morbidities," Alvin should have been admitted to an intensive care unit where he would have been placed on a cardiac monitor. According to Dr. Rushing, Alvin "died from a cardiac rhythm disturbance," such as ventricular fibrillation, ventricular tachycardia, or cardiac arrest.

When describing Dr. Sosa's conduct and how it allegedly caused Alvin's death, Dr. Rushing's report speaks only in terms of possibilities, failing to explain how and why Dr. Sosa's alleged breach of the applicable standards of care caused Alvin's death. According to Dr. Rushing, Dr. Sosa breached the applicable standards of care by: (1) failing to personally examine and assess

Alvin; (2) failing to ensure the correct placement and function of Alvin's naso gastric tube; (3) failing to confirm or eliminate abdominal distension or other abdominal abnormality; (4) failing to monitor electrolytes in a timely manner; and (5) failing to admit Alvin to the intensive care unit. When explaining these breaches, Dr. Rushing describes what he believed Dr. Sosa should have done, concluding Alvin's chances of survival would have been greater. For example, when opining Alvin should have been admitted to the intensive care unit due to his "morbidities," Dr. Rushing speaks only in terms of possibilities, stating Alvin's "chances of surviving a cardiac arrest would have been greatly improved." Opinions based on possibilities are insufficient. *See, e.g., Bowie*, 79 S.W.3d at 53 (holding expert's opinion that plaintiffs "would have had the possibility of a better outcome" did not meet standard); *Hutchinson v. Montemayor*, 144 S.W.3d 614, 617 (Tex. App.—San Antonio 2004, no pet.) (holding expert opinion that if arteriogram had been done, there was "possibility" of correctable lesion such that amputation may have been avoided did not meet standard).

Dr. Rushing completely fails to link Dr. Sosa's alleged failures to Alvin's death. *See Jelinek*, 328 S.W.3d at 539–40; *Costello*, 141 S.W.3d at 249. Rather, we are left to fill in gaps by drawing inferences as to what Dr. Rushing might have meant. *See Bowie*, 79 S.W.3d at 53. For instance, Dr. Rushing opines Alvin's vomiting should have been documented; however, nowhere in the report does Dr. Rushing explain how such documentation would have resulted in Dr. Sosa taking different actions, thereby preventing Alvin's death. *See id.* (highlighting causation opinion that contains gaps in chain of causation fails to meet statute's requirements); *Tenet Hospitals, Ltd. v. Love*, 347 S.W.3d 743, 755 (Tex. App.—El Paso 2011, no pet.) (holding expert statement that hospital's failure to provide on-call pulmonologist caused death without explanation of how that might have altered course of treatment rendered causation opinion insufficient); *Estorque v. Schafer*, 302 S.W.3d 19, 28 (Tex. App.—Fort Worth 2009, no pet.) (holding expert's failure to

explain how consult with urologist would have changed outcome rendered causation opinion insufficient); *Costello*, 141 S.W.3d at 249 (holding expert's claim that better monitoring of cardiac patient would have prevented heart attack failed to explain how result would be different and was therefore insufficient). Later in the report, Dr. Rushing states Alvin's persistent vomiting suggested Alvin had an intestinal obstruction; but again, Dr. Rushing does not explain how or why Alvin's intestinal obstruction was linked to his cardiac rhythm disturbance — the ultimate reason Dr. Rushing believed Alvin died — or what additional actions Dr. Sosa could have taken to prevent the cardiac rhythmic disturbance. *See Jelinek*, 328 S.W.3d at 539–40; *Bowie*, 79 S.W.3d at 53.

At another point in the report, Dr. Rushing states Alvin's low magnesium levels left him predisposed to ventricular arrhythmias, such as ventricular tachycardia or cardiac arrest. Dr. Rushing opines that if Dr. Sosa would have ordered an immediate intravenous replacement of magnesium, "it would have reduced [Alvin's] risk for cardiac arrhythmia," again, speaking in terms of chances and leaving us to infer that Alvin's risk for cardiac arrhythmia was linked to the cardiac rhythm disturbance that caused his death. *See Jelinek*, 328 S.W.3d at 539–40; *Bowie*, 79 S.W.3d at 53. Finally, Dr. Rushing opines that Dr. Sosa should have examined Alvin for abdominal distention, which he explains is one cause of cardiac arrest. According to Dr. Rushing, if such an examination would have occurred, Dr. Sosa would have been able to reposition the naso gastric tube, assuming it was not properly placed, and prevented abdominal distention, leaving us to infer that the repositioning of the naso gastric tube would have prevented Alvin's death. *See Bowie*, 79 S.W.3d at 53.

Accordingly, we conclude Dr. Rushing's report fails to clearly link how Dr. Sosa's omissions were a substantial factor in bringing about Alvin's death. *See Zamarripa*, 526 S.W.3d at 460; *Jelinek*, 328 S.W.3d at 539–40; *Costello* 141 S.W.3d at 249. Rather, the report speaks in terms of chances and possibilities, leaving us to infer that absent Dr. Sosa's omissions, Alvin's

death would not have occurred. *See Zamarripa*, 526 S.W.3d at 460; *Bowie*, 79 S.W.3d at 53. Because the report requires inferences or guesses as to what Dr. Rushing likely meant, we hold the report is insufficient as to the issue of causation with respect to Dr. Sosa. *See Rodriguez*, 2016 WL 368772, at *2.

With respect to Nurse Back, we hold Dr. Rushing's report is likewise conclusory and speculative because it fails to explain how Nurse Back's alleged negligence caused Alvin's death or what Nurse Back could have done to prevent Alvin's death. In his report, Dr. Rushing explains Nurse Back failed to properly assess Alvin's status, recognize Alvin's cardiac arrest in a timely manner, call a code blue in a timely manner, and keep an appropriate clinical record. Dr. Rushing states that when Nurse Back began her assessment of Alvin, she reported he was "snoring audibly and had deep regular respirations," but by the time she listened to his heart, she could not hear his heart beating and therefore called a code blue. According to the expert report, "there was a 30 minute time interval from the beginning of her assessment until the code blue was called." According to Dr. Rushing, "it should have been obvious when [Alvin] stopped breathing." Dr. Rushing continues, stating "there was an inordinate delay time wise between [Alvin's] cardiorespiratory arrest and the initiation of CPR." At no point does Dr. Rushing link these facts and explain how Nurse Back's omissions caused Alvin's death. Rather, Dr. Rushing's report falls short, speculating that if Nurse Back had called a code blue more timely, Alvin would have a better chance of surviving. We are then left to infer that Nurse Back should have recognized when Alvin stopped breathing and initiated CPR, and that by initiating CPR in a more timely manner, Alvin would not have died. *See Craig v. Dearbonne*, 259 S.W.3d 308, 313 (Tex. App.—Beaumont 2008, no pet.) (holding expert report deficient because it failed to explain how different treatment would have been effective if it had been started earlier); *Jones v. King*, 255 S.W.3d 156, 158, 159 (Tex. App.—San Antonio, 2008, pet. denied) (holding expert's opinion as to causation was conclusory

because it failed to explain whether earlier treatment would have been effective). Accordingly, because we conclude Dr. Rushing's opinion as to causation is conclusory with respect to Nurse Back, we hold the expert report is insufficient.

With regard to the hospital, Rita and Karl asserted it was liable based on respondeat superior, i.e., the hospital was vicariously liable for the allegedly negligent actions of Dr. Sosa and Nurse Back. They did not allege any direct negligence claims against the hospital, and Dr. Rushing's report does not include separate opinions with regard to any direct negligence by the hospital. When a party's alleged health care liability is purely vicarious, a report that inadequately implicates the actions of that party's agent or employees is likewise insufficient as to the party alleged to be vicariously liable. *See Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671–72 (Tex. 2008). Thus, because Dr. Rushing's report is inadequate as to causation with regard to Dr. Sosa and Nurse Back, it is likewise insufficient with regard to the claims of respondeat superior asserted against Northeast Medical Hospital. *See id.*

## CONCLUSION

Having determined Dr. Rushing's report fails to sufficiently explain the causation element with regard to any of Rita and Karl's health care liability claims, we reverse the trial court's orders denying appellants' motions to dismiss, and we remand the cause to the trial court for the determination of attorney's fees under section 74.251(b)(1) of the Code, and for entry of a final order dismissing Rita and Karl's claims against appellants.[1]

Marialyn Barnard, Justice

---

[1] The plain language of section 74.351 permits one thirty-day extension to cure a specified deficiency in an expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c); *see also Leland v. Brandal*, 257 S.W.3d 204, 207 (Tex. 2008). Because Rita and Karl were previously granted a thirty-day extension to cure deficiencies in Dr. Rushing's report, we have no authority to grant them another extension. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c); *see also Leland*, 257 S.W.3d at 207.