

# NUMBER 13-23-00036-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

TEXAS LAUREL RIDGE
HOSPITAL, L.P D/B/A LAUREL
RIDGE TREATMENT CENTER,                                    Appellant,

v.

BELINDA MAINOR AND MICHAEL
MAINOR, INDIVIDUALLY AND AS
NEXT FRIEND OF J.B., A MINOR
CHILD,                                                              Appellees.

## ON APPEAL FROM THE 408TH DISTRICT COURT
## OF BEXAR COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Peña
Memorandum Opinion by Justice Peña**

Appellant Texas Laurel Ridge Hospital, L.P. d/b/a Laurel Ridge Treatment Center (Laurel Ridge) appeals the trial court's order determining that claims brought by appellees Belinda Mainor and Michael Mainor, individually and as next friend of J.B., a minor child (the Mainors) were not health care liability claims subject to the expert report requirement of the Texas Medical Liability Act (TMLA).[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.353 ("Preliminary Determination for Expert Report Requirement"). In one issue, Laurel Ridge argues that the trial court erred because the Mainors' claims constituted a safety-based health care liability claim. We affirm.

## I.    BACKGROUND

J.B. was enrolled in a treatment program offered by Laurel Ridge for youth struggling with behavioral issues. Laurel Ridge employees transported J.B. in a van from a designated pick-up location to Laurel Ridge's High Point Campus where J.B. was to disembark. J.B. fell asleep en route, and she was left in the van upon arrival. A Laurel Ridge employee later drove the van to a second site and left it unattended, unaware that J.B. was still inside. Some time later, J.B. awoke and attempted to exit the van, but the back doors were child locked. J.B. then kicked out a window and exited through the opening. J.B. was discovered by a Laurel Ridge employee, who drove her back to the High Point campus.

The Mainors sued Laurel Ridge for negligence and gross negligence, claiming it violated its duty to supervise and keep J.B. safe, thereby causing J.B. to suffer personal injuries. The Mainors sought damages for medical expenses, physical pain, mental anguish, and physical impairment. After Laurel Ridge answered suit, the Mainors filed a

---

[1] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

Motion for Preliminary Determination for Expert Report Requirement. *See id.* The Mainors argued that they were not asserting a health care liability claim under the TMLA. *See id.* § 74.001(a)(13). They conceded that Laurel Ridge was a health care provider, but they maintained that the alleged negligence did not occur in the course of protecting a patient from harm or in a place where patients might receive treatment. The Mainors further argued that the negligence was not based on any professional duties owed by Laurel Ridge.

In its response, Laurel Ridge argued that the Mainors' claim was a health care liability claim because it alleged deviations from safety standards related to the provision of health care. Laurel Ridge maintained that it was required to keep J.B. safe during transport pursuant to its duties as a health care provider. Laurel Ridge attached evidence establishing that the van was staffed by two mental health workers. Laurel Ridge asserted that the employees transporting J.B. were obligated to ensure that J.B. "attended treatment each day free from harm or danger." Laurel Ridge also attached evidence establishing that its employees performed temperature checks and COVID-19 screening upon pick-up. The Mainors filed a reply arguing that there is no substantive nexus between the provision of health care and the safety standards Laurel Ridge allegedly violated.

Following a hearing, the trial court signed an order concluding that the Mainors' claims were not health care liability claims and that they were not required to file an expert report. This interlocutory appeal followed. *See id.* § 51.014(a)(15).

## II.    DISCUSSION

## A.    Standard of Review & Applicable Law

When a claim qualifies as a health care liability claim under the TMLA, it is subject to certain statutory provisions, including a requirement that the plaintiff serve the defendant with an expert report describing the expert's opinions as to the applicable standards of care, how the defendant's conduct failed to meet those standards, and how those failures caused the claimant's injury, harm, or damages. *See id.* § 74.351(a), (r)(6). The TMLA authorizes the trial court to "issue a preliminary determination regarding whether a claim made by the claimant is a health care liability claim for the purposes of [the expert-report requirement]," upon the motion of the plaintiff. *Id.* § 74.353(a).

A "health care liability claim" is defined as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id.* § 74.001(a)(13). This definition has been construed to include three elements: (1) the defendant is a physician or health care provider; (2) the claim concerns treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's conduct is the proximate cause of the plaintiff's injury. *Lake Jackson Med. Spa, Ltd. v. Gaytan*, 640 S.W.3d 830, 840 (Tex. 2022) (citing *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 179–80 (Tex. 2012)). "[C]laims alleging the negligent provision of health care fall within the [TMLA] when the alleged damages stem from health-care-

4

related claims, regardless of the type of injury alleged." *Coming Attractions Bridal & Formal, Inc. v. Tex. Health Res.*, 595 S.W.3d 659, 666 (Tex. 2020).

We review de novo the legal question of whether a plaintiff has pleaded a health care liability claim. *Gaytan,* 640 S.W.3d at 836 (citing *Baylor Scott & White, Hillcrest Med. Ctr. v. Weems*, 575 S.W.3d 357, 363 (Tex. 2019)). In making our determination, "we must consider the 'entire court record,' including 'the pleadings, motions and responses, and relevant evidence properly admitted.'" *Id.* (quoting *Loaisiga v. Cerda*, 379 S.W.3d 248, 258 (Tex. 2012)). We are not bound by how the plaintiff characterizes a claim in her pleadings if they do not accurately reflect the claim's underlying nature. *See Loaisiga*, 379 S.W.3d at 255. Instead, we consider the operative facts underlying the plaintiff's claim that are relevant to her alleged injury, rather than how she describes the facts or legal theories in her pleadings. *Collin Creek Assisted Living Ctr. v. Faber*, 671 S.W.3d 879, 885 (Tex. 2023). If the operative facts could support a "health care liability claim," then the TMLA applies, and an expert report is required. *See id.*

## B. Safety Standards

The parties' dispute centers on the second element of a health care liability claim—whether the claim concerns treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care. In particular, Laurel Ridge argues that the Mainors' claim concerns a departure from accepted standards of safety related to the provision of health care.

There is no statutory definition for "safety," but the Texas Supreme Court has defined the term to mean "the condition of being 'untouched by danger; not exposed to

5

danger; secure from danger, harm or loss.'" *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 501 (Tex. 2015) (quoting *Diversicare Gen. Partner., Inc. v. Rubio*, 185 S.W.3d 842, 855 (Tex. 2005)); *see Christus Spohn Health Sys. Corp. v. High*, 658 S.W.3d 375, 380 (Tex. App.—Corpus Christi–Edinburg 2022, pet. denied). A safety standards-based claim against a physician or health care provider is a health care liability claim only if a "substantive nexus" exists between the "safety standards allegedly violated and the provision of health care." *Ross*, 462 S.W.3d at 504. "The pivotal issue . . . is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety." *Id.* at 505. In determining whether a substantive nexus exists, we examine the following factors:

1. Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

2. Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;

3. At the time of the injury was the claimant in the process of seeking or receiving health care;

4. At the time of the injury was the claimant providing or assisting in providing health care;

5. Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or

7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

6

*Id.*; *see Collin Creek*, 671 S.W.3d at 889 (explaining that "courts may use *Ross* to evaluate alleged departures from both safety and health care standards, as well as alleged departures from standards for health care providers that implicate safety"). The analysis under these factors, especially the seventh, may involve comparing the allegedly negligent acts or omissions to potentially relevant government regulations. *See Coming Attractions*, 595 S.W.3d at 665 n.22; *PHCC-La Hacienda Rehab. & Health Care Ctr. LLC v. Crume*, 492 S.W.3d 797, 801 (Tex. App.—Houston [1st Dist.] 2016, no pet.). If the record does not affirmatively show that the plaintiff's claims are health care liability claims, the statutory expert-report requirements do not apply. *Hous. Methodist Willowbrook Hosp. v. Ramirez*, 539 S.W.3d 495, 498 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Ross*, 462 S.W.3d at 505).

Although the third *Ross* factor is implicated by the Mainors' suit because J.B. was in the process of seeking mental health care at the time of the alleged injury, none of the remaining factors are present. First, the alleged negligence of Laurel Ridge in leaving J.B. alone in a locked van did not occur in the course of performing tasks with the purpose of protecting patients from harm. *See Ross*, 462 S.W.3d at 504. Unlike other cases where a health care liability claim arose from the negligent transportation of a patient, there is no allegation that Laurel Ridge failed to properly secure her in the vehicle during transport or negligently operated a vehicle in an emergency medical situation. *Cf. City of Houston v. Houston*, 608 S.W.3d 519, 531 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (concluding that claim was a health care liability claim where the plaintiff was improperly secured to a gurney and fell to the ground while being transported to the ambulance); *Sherman v. HealthSouth Specialty Hosp., Inc.*, 397 S.W.3d 869, 871–75 (Tex. App.—

7

Dallas 2013, pet. denied) (same where plaintiff was injured while being transported by hospital clinic employee in a van and the plaintiff fell from a wheelchair and was injured during transport); *see also City of Houston v. Hussein*, No. 01-18-00683-CV, 2020 WL 6788079, at *17 (Tex. App.—Houston [1st Dist.] Nov. 19, 2020, pet. denied) (mem. op. on reh'g) (holding that patient's claim against ambulance driver for traffic violations was a health care liability claim where she was tossed and injured during transport during a medical emergency); *Taton v. Taylor*, No. 02-18-00373-CV, 2019 WL 2635568, at *4–7 (Tex. App.—Fort Worth June 27, 2019, no pet.) (mem. op.) (same where plaintiff was injured while being transported by emergency medical services in a handicap accessible van and an employee failed to secure the wheelchair into place and did not secure plaintiff in the wheelchair); *Bain v. Capital Senior Living Corp.*, No. 05-14-00255-CV, 2015 WL 3958714, at *1–4 (Tex. App.—Dallas June 30, 2015, pet. denied) (mem. op.) (same where patient was injured because an assisted living facility's employee did not properly secure her to her wheelchair while she was being transported in a van to a doctor's appointment). Contrary to these cases, J.B.'s injuries arose after arrival at the intended destination. *See Hill Country San Antonio Mgmt. Services, Inc. v. Trejo*, 424 S.W.3d 203, 212 (Tex. App.—San Antonio 2014, pet. dism'd) (concluding that claim was not a health care liability claim where plaintiff alleged that provider was negligent in leaving her son with Down Syndrome in a van when it was unsafe to do so and allowing her son to depart the vehicle unattended); *see also Coci v. Dower*, 585 S.W.3d 652, 656 (Tex. App.—Eastland 2019, pet. denied) (explaining that "[w]e do not believe that the fact that an ambulance was involved automatically morphs all claims into health care liability claims" and noting that the "essence of the claims" in other cases that concluded a health care

8

liability claim was asserted "involved a failure to properly secure the claimants in wheelchairs before transport[]").

Second, aside from Laurel Ridge's unsupported assertion, nothing in the record indicates that the van was a place that patients might be during the time they were receiving care. The fourth factor is inapplicable because there is no allegation that J.B, as the patient, was providing or assisting in providing health care at the time of her alleged injury.

As to factor five, Laurel Ridge generally argues that the alleged negligence is based on safety standards arising from professional duties owed by Laurel Ridge to care for, monitor, and supervise J.B. However, it fails to explain what professional duty is implicated by the operative facts—leaving a sleeping patient in a child-locked vehicle. In that regard, we agree with the Mainors that the "alleged negligence is based on general standards applicable to any person[.]" *Compare Trejo*, 424 S.W.3d at 212 (concluding that alleged negligence in leaving claimant in a van sounds in general negligence), *and Coci*, 585 S.W.3d at 656 (concluding that alleged failure to follow the rules of the road did not implicate standards that arise from professional duties owed to claimant as health care providers), *with Houston*, 608 S.W.3d at 530 (allegations that emergency medical technicians failed to operate a gurney in a safe manner were based on safety standards arising from professional duties).

As to the sixth factor, Laurel Ridge does not contend that an instrumentality used in providing health care was involved in the alleged negligence. Moving to the final *Ross* factor, Laurel Ridge argues that the alleged negligence concerned safety-related requirements set out by Title 26, Chapter 510 of Texas Administrative Code and Chapter

9

577 of Texas Health and Safety Code generally regulating private mental health hospitals. *See* TEX. ADMIN. CODE §§ 510.1–510.131; TEX. HEALTH & SAFETY CODE ANN. §§ 577.001–577.064. While these statutes contain provisions that address general safety requirements applicable to private psychiatric hospitals, Laurel Ridge cites no provision applicable to the alleged negligence in this case—i.e., failing to ensure that no person is left unattended in a child-locked vehicle. Rather, the duty allegedly violated here is not unique to a health care provider. *See Coci*, 585 S.W.3d at 657.

Based on the application of the *Ross* factors, we conclude that there is no "substantive nexus" between the "safety standards allegedly violated and the provision of health care." *Ross*, 462 S.W.3d at 504. In other words, the standards on which the Mainors' claims are based do not implicate Laurel Ridge's duties as a health care provider. *See id.* at 505. Therefore, the trial court did not err in determining that the Mainors' claims were not a health care liability claims. We overrule Laurel Ridge's sole issue.

### III.    CONCLUSION

We affirm the trial court's judgment.

L. ARON PEÑA JR.
Justice

Delivered and filed on the
16th day of May, 2024.

10