

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00538-CV

Henry **CARREON**,
Appellant

v.

Joseph **KELLY**, MD, Waqar Hussain, MD, and Methodist Healthcare System of San Antonio,
Ltd, LLP d/b/a Metropolitan Methodist Hospital,
Appellees

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2019-CI-17867
Honorable Rosie Alvarado, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Irene Rios, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: May 31, 2023

AFFIRMED

In this medical malpractice case, appellant Henry Carreon appeals the trial court's

judgment dismissing with prejudice his claims against appellees Joseph Kelly, MD, Waqar

Hussain, MD, and Methodist Healthcare System of San Antonio, Ltd., L.L.P. d/b/a Metropolitan

Methodist Hospital ("Methodist") (collectively "the appellees") for failure to serve the appellees

with an adequate expert report under section 74.351 of the Texas Civil Practice and Remedies

Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l*). We affirm.

## BACKGROUND

According to Carreon's second amended petition, Carreon's mother, Alicia Carreon ("Alicia"), sought health treatment at Methodist "[o]n or about September 9, 2017." Alicia was diagnosed with pneumonia and a urinary tract infection and admitted to the intensive care unit at Methodist. In his petition, Carreon alleges Dr. Kelly prescribed Fentanyl to Alicia on September 14, 2017. Alicia died later that day.

Carreon filed a wrongful death suit claiming Dr. Kelly, Dr. Hussain, and Methodist committed medical malpractice and their negligence caused Alicia's death. Carreon alleged Dr. Kelly negligently prescribed Fentanyl to a patient with respiratory distress and pneumonia. Carreon alleged it was not necessary to prescribe the Fentanyl because Alicia was not in pain and neither Alicia, nor her family, consented to the administration of Fentanyl.

Carreon alleged Methodist "breached the standard of care when it moved [Alicia], failed to appropriately care for her, failed to appropriately monitor [Alicia], and administered Fentanyl without [e]nsuring proper authorization from the Carreons." Carreon alleged Dr. Hussain "violated the standard of care when he moved [Alicia] from the intensive care unit to the regular rooms, and failed to continue to monitor her . . . ."

Carreon timely served the appellees with an expert report written by Michael J. Dorsa, MD, in accordance with the timeline set forth in subsection 74.351(a) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). The appellees timely objected to the expert report arguing Dr. Dorsa was not qualified to provide an expert report in this case and arguing the report was deficient. The appellees filed motions to dismiss the case for failure to serve a sufficient expert report under chapter 74 of the Texas Civil Practice and Remedies Code. The trial court sustained the appellees' objections, denied the appellees' respective motions

to dismiss, and granted Carreon a thirty-day extension to serve the appellees with an amended expert report that cured the deficiencies in the original expert report. *See id.* § 74.351(c).

Carreon timely served the appellees with an amended expert report written by Dr. Dorsa.[1] The appellees filed amended motions to dismiss the case arguing the amended expert report did not establish Dr. Dorsa's qualification to provide expert opinions and arguing the amended expert report did not cure the deficiencies in the original report. The trial court granted the appellees' amended motions to dismiss the case with prejudice. *See id.* § 74.351(b). Carreon appeals.

## STANDARD OF REVIEW

"We review a trial court's decision to grant or deny a motion to dismiss based on the adequacy of an expert report for an abuse of discretion." *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018). "A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to any guiding principles and rules." *Peterson Reg'l Med. Ctr. v. O'Connell*, 387 S.W.3d 889, 892 (Tex. App.—San Antonio 2012, pet. denied). "In reviewing the trial court's decision, we may not substitute our judgment for that of the trial court regarding factual matters." *Thilo Burzlaff, M.D., P.A. v. Weber*, 582 S.W.3d 314, 320 (Tex. App.—San Antonio 2018, no pet.). "In analyzing a report's sufficiency under this standard, we consider only the information contained within the four corners of the report." *Abshire*, 563 S.W.3d at 223.

## DISCUSSION

In his first issue, Carreon—who is pursuing this appeal pro se—asserts the trial court erred in excluding critical evidence. In his second issue, Carreon asserts there is insufficient evidence

---

[1] Carreon also served the appellees with the affidavit of Thomas Cook, PAC. Carreon does not mention Cook's affidavit in his brief, and we do not address it here.

to support the trial court's judgment. We construe Carreon's first and second issues as a challenge to the trial court's order dismissing the case for failure to provide a sufficient expert report.

### EXPERT QUALIFICATION

The appellees argue the trial court did not abuse its discretion when it dismissed the case because Dr. Dorsa is not qualified to render an expert opinion regarding whether they departed from the accepted standard of care and, therefore, is not qualified to provide an expert report.

"A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition on an expert report in [s]ubsection (r)(6)." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l*). Subsection 74.351(r)(6) states an expert report "means a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351(r)(6).

Subsection 74.351(r)(5) states:

"Expert" means:

> (A)  with respect to a person giving opinion testimony regarding whether a physician departed from accepted standards of medical care, an expert qualified to testify under the requirements of [s]ection 74.401;

> (B)  with respect to a person giving opinion testimony regarding whether a health care provider departed from accepted standards of health care, an expert qualified to testify under the requirements of [s]ection 74.402 . . . .

*Id.* § 74.351(r)(5)(A), (B).

"An expert must establish that he is qualified to provide an acceptable report." *Harrington v. Schroeder*, No. 04-15-00136-CV, 2015 WL 9001573, at *3 (Tex. App.—San Antonio Dec. 16, 2015, pet. denied) (mem. op.). "Qualifications of an expert must appear in the expert report and

curriculum vitae and cannot be inferred." *Id.* "Analysis of the expert's qualifications under section 74.351 is limited to the four corners of the expert report and the expert's curriculum vitae." *Id.* (citing *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 463 (Tex. 2008) (orig. proceeding)). We review the trial court's determination of an expert's qualifications under an abuse-of-discretion standard and "[c]lose calls must go to the trial court." *Larson v. Downing*, 197 SW.3d 303, 304 (Tex. 2006); *see also E.D. by and through B.O. v. Tex. Health Care, P.L.L.C.*, 644 S.W.3d 660, 664 (Tex. 2022) (internal quotation marks, alterations, and citations omitted) ("This adequacy inquiry is confined to the four corners of the report, taken as a whole, and under an abuse-of-discretion standard, close calls must go to the trial court.").

*(A) With Respect to Dr. Kelly and Dr. Hussain*

"To be qualified to provide opinion testimony regarding whether a physician departed from the accepted standard of medical care, the expert must satisfy section 74.401." *Harrington*, 2015 WL 9001573, at *3. Under section 74.401, the expert must be a physician who:

(1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;

(2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.401(a). "'[P]racticing medicine' or 'medical practice' includes, but is not limited to, training residents or students at an accredited school of medicine or osteopathy or serving as a consulting physician to other physicians who provide direct patient care, upon the request of such other physicians." *Id.* § 74.401(b). "In determining whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness: (1) is board certified or has other

substantial training or experience in an area of medical practice relevant to the claim; and (2) is actively practicing medicine in rendering medical care services relevant to the claim." *Id.* § 74.401(c).

Here, there are contradictory statements in Dr. Dorsa's amended expert report and his curriculum vitae ("CV") regarding whether he was actively practicing medicine at the time he provided the amended expert report or at the time the claim arose.

In an attempt to satisfy the qualification requirements under section 74.401, Dr. Dorsa's amended expert report states:

> At the time Alicia B. Carreon died on September 14, 2017, I maintained an active physicians license and still saw her independently during this time. I was actively practicing medicine in rendering medical services relevant to the claim in the present case. To wit, I diagnosed and treated patients and specifically geriatric patients up to and including the date of death of Alicia Carreon. I actively consulted with patients concerning their advanced age, the impact their advanced age had on their medical conditions, including respiratory problems, and in the use of pain medications, including specifically the pain medication Fentanyl.

It is undisputed that Alicia died on September 14, 2017. Dr. Dorsa's amended expert report is dated October 19, 2020. The amended expert report provides a timeline of Dr. Dorsa's experiences actively practicing medicine through 2007. The amended expert report then states:

> Due to injuries I sustained in a [motor vehicle accident], I was forced to leave active medical practice and enter into a medical sabbatical to undergo numerous surgeries on my neck and spine. Just prior to leaving active practice he[2] was employed by Visiting Physicians Associates (VPA); a practice group that catered to house call only practice of mostly geriatric house bound patients.

Dr. Dorsa's CV states he was associated with Visiting Physicians Associates through 2011. The amended expert report continues: "My last five years of practice I dealt with geriatric patients, including surgery with geriatric patients." However, the amended expert report does not provide a timeline of the five years to which Dr. Dorsa is referring and does not provide any dates for

---

[2] Dr. Dorsa's report changed from first-person narration to third-person narration.

hospitals or medical providers he is associated with after 2011. The only reference to Dr. Dorsa's practice after 2011 is a section in his CV that states:

> Present
> Limited Practice. I was in a serious accident and it has prevented m[e] from maintaining an active daily practice. I continue to maintain my license and provide medical consultations, primarily to family and friends. It so happens that Alicia Carreon was one of my patients prior to my accident and I continued to consult and advise her on all of her medical issues, including medications, up until her death.

While Dr. Dorsa's amended expert report states he "was actively practicing medicine in rendering medical services relevant to the claim[,]" this statement is directly contradicted by Dr. Dorsa's CV, which states after 2011 "a serious car accident . . . has prevented [him] from maintaining an active daily practice." In determining Dr. Dorsa's qualifications to provide the expert opinions, the trial court was required to consider whether Dr. Dorsa was practicing medicine at the time he provided the amended expert report or was practicing medicine at the time the claim arose. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.401(a)(1).

Here, the contradictory statements in Dr. Dorsa's amended expert report and CV created a factual dispute on whether Dr. Dorsa was practicing medicine at the time he provided the amended expert report or at the time the claim arose. The trial court could have resolved this factual dispute against Carreon and determined that Dr. Dorsa was not practicing medicine at the time he rendered his expert opinion or at the time the claim arose. We defer to the trial court's determination of factual matters and do not substitute our judgment for the trial court's judgment. *See Thilo Burzlaff, M.D., P.A.*, 582 S.W.3d at 320. Therefore, we cannot say it was outside the zone of reasonable disagreement for the trial court to determine that Dr. Dorsa's report failed to show he was qualified to provide expert opinion regarding applicable standards of care and whether appellees departed from those standards of care. *See Diamond Offshore Servs. Ltd. v. Williams*,

542 S.W.3d 539, 545 (Tex. 2018) ("The trial court has extensive discretion in evidentiary rulings, and we will uphold decisions within the zone of reasonable disagreement.").

Furthermore, in determining whether Dr. Dorsa was qualified on the basis of training or experience, the trial court was required to consider whether Dr. Dorsa was actively practicing medicine in rendering medical care services relevant to the claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.401(c)(2). Dr. Dorsa does not state anywhere in his amended expert report that he was actively practicing medicine in a hospital setting or overseeing patients who were in intensive care at the time he rendered his expert opinion or at the time the claim arose. Dr. Dorsa's amended expert report states:

> I *had* privileges in Christus Santa Rosa for many years and *during that time*, I was the treating physician in the hospital setting, responsible [for] all treatment and care of the patients, including the use of prescription pain medication. I made the decisions on whether and when to transport patients to and from the ICU, and am familiar with the standard of care related to those decisions.

Dr. Dorsa's report indicates that he actively practiced medicine in the hospital setting some time in the past, but—at the time he prepared his report—he no longer maintained hospital privileges. Dr. Dorsa's CV indicates his residency in family medicine at Christus Santa Rosa occurred from 1997 to 2000. His CV further indicates that after completing his residency, Dr. Dorsa "practiced out of Santa Rosa Hospital and Southwest General Hospital[] as a fully privileged physician." However, Dr. Dorsa's CV provides no other dates in which he may have maintained hospital privileges after the year 2000. The trial court could have reasonably determined Dr. Dorsa was not qualified—on the basis of training or experience—to render expert opinions because he was not actively practicing medicine in the hospital setting or overseeing intensive care patients at the time he provided the amended expert report or at the time the claim arose. *See id.*; *see also O'Connell*, 387 S.W.3d at 892 ("A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to any guiding principles and rules.").

Because we defer to the trial court's determination on factual matters and—under the appropriate standard of review—"close calls must go to the trial court[,]" we hold the trial court did not abuse its discretion when it dismissed Carreon's case against Dr. Kelly and Dr. Hussain for failure to serve an adequate expert report. *See E.D. by and through B.O.*, 644 S.W.3d at 664 (alterations omitted).

*(B) With Respect to Methodist*

To be qualified to provide opinion testimony regarding whether a health care provider departed from the accepted standard of care, the expert must satisfy section 74.402 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(B). Section 74.402 provides:

> In a suit involving a health care liability claim against a health care provider, a person may qualify as an expert witness on the issue of whether the health care provider departed from accepted standards of care only if the person:
>
> (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;
>
> (2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
>
> (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

*Id.* § 74.402(b). "In determining whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness: (1) is certified by a licensing agency of one or more states of the United States or a national professional certifying agency, or has other substantial training or experience,

in the area of health care relevant to the claim; and (2) is actively practicing health care in rendering health care services relevant to the claim." *Id.* § 74.402(c).

Dr. Dorsa claims Methodist "was also a proximate cause of [Alicia's] death" because the hospital staff failed to properly monitor Alicia or record any changes to her condition throughout the day that she died. Dr. Dorsa also claims Methodist's nurses, due to a language barrier, incorrectly reported Alicia's pain level.[3] Dr. Dorsa opines if the nurses had correctly reported Alicia's pain level to her physician, then Fentanyl would not have been prescribed to her.

Dr. Dorsa's amended expert report states: "I oversaw nurses in my practice and in hospital settings and am familiar with the nursing standards of care in a hospital setting." This is the only statement Dr. Dorsa makes in his amended expert report purporting to show his qualifications to provide an opinion on the standard of care provided by Methodist. As mentioned above, the trial court was well within its discretion to determine Dr. Dorsa was not actively practicing health care in a hospital setting or overseeing nurses at the time he prepared his report or at the time the claim arose. The trial court could have reasonably concluded Dr. Dorsa was not qualified on the basis of training or experience to provide an expert opinion on whether Methodist departed from the accepted standard of care relevant to Carreon's claims against the hospital. Therefore, we hold the trial court did not abuse its discretion when it dismissed Carreon's case against Methodist for failure to serve an adequate expert report.

Accordingly, Carreon's first and second issues are overruled.

### NEFARIOUS ACTS

In his third issue, Carreon asserts the law partner of an attorney representing one of the appellee doctors attempted to coerce Carreon to "end this case" and not pursue an appeal "or else

---

[3] According to Dr. Dorsa's amended expert report, Alicia only spoke Spanish and the nurses caring for Alicia did not speak Spanish.

he was going to take action against [Carreon] with the help of the trial judge[.]" Specifically, Carreon alleges the attorney told Carreon he was going to ask the trial court to assess between $75,000.00 to $100,000.00 in attorney's fees if Carreon chose to appeal the trial court's order dismissing the case with prejudice.

"[A] pro se litigant is held to the same standards as licensed attorneys and must comply with applicable laws and rules of procedure." *Strange v. Cont'l Cas. Co.*, 126 S.W.3d 676, 677 (Tex. App.—Dallas 2004, pet. denied). "On appeal, as at trial, the pro se appellant must properly present its case." *Id.* at 678. "It is well-settled that an appellant's brief must contain clear and concise arguments with appropriate citations to authorities and the record." *Neira v. Scully*, No. 04-14-00687-CV, 2015 WL 4478009, at *1 (Tex. App.—San Antonio July 22, 2015, no pet.) (mem. op.). "[I]t is the appellant's burden to discuss his assertions of error, and we have no duty— or even right—to perform an independent review of the record and applicable law to determine whether there was error." *Id.* (alterations omitted). "[W]e cannot speculate as to the substance of the specific issues appellant claims we must address." *Strange*, 126 S.W.3d at 678. "An issue on appeal unsupported by argument or citation to any legal authority presents nothing for the court to review." *Id.*

Here, Carreon has presented nothing for us to review. The only reference to the record Carreon provides in his third issue is a reference to his pro se motion to recuse the trial judge. Carreon does not provide any references to the record substantiating his claims that he was coerced, threatened, or that the attorney and the trial court colluded to threaten or coerce Carreon. Nor does Carreon cite any authority supporting his third issue. Because Carreon's brief does not adequately present his third issue for review, we must overrule Carreon's third issue.

From our review of the reporter's record, we note the trial court acted with great judicial temperament, giving Carreon every opportunity to be heard and to explain his grievances. An

attorney for one of the appellee doctors asserted the accused attorney had never been involved in this case. The trial judge informed Carreon that she did not know the attorney—personally, professionally, or otherwise—who allegedly threatened Carreon. We also note that the administrative judge for this judicial region heard and denied Carreon's motion to recuse the trial judge.

Here, the appellees were entitled to an award of reasonable and necessary attorney's fees once the trial court dismissed the case with prejudice. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b)(1) (providing the affected physician or health care provider is entitled to reasonable attorney's fees and costs of court when the trial court dismisses a case for failure to serve an adequate expert report). However, the appellees offered to waive their attorney's fees if Carreon agreed to waive his right to appeal. Ultimately, the appellees still waived their attorney's fees even though Carreon appealed. The trial court rendered judgment dismissing Carreon's claims with prejudice, but did not assess attorney's fees against Carreon. The record does not reflect any nefarious actions by the trial court or the attorneys representing the appellees.

## CONCLUSION

We affirm the trial court's judgment dismissing Carreon's claims with prejudice.

Irene Rios, Justice